## IN THE UNITED STATED DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| JT McADAMS, ANNIE McADAMS, and CAROL WHITE | § § § | |
| Plaintiffs, | § § | |
| V. | § § | Cause No. _____ |
| BULLET OIL AND GAS, LLC, CROWN ENERGY COMPANY, and STEVE VAN HORN | § § § § | |
| Defendants. | § § | |

## ORIGINAL COMPLAINT

COME NOW Plaintiffs JT and Annie McAdams and Carol White, (hereinafter "Investors" or "Plaintiffs"), who complain of Defendants Steve Van Horn, Bullet Oil and Gas, LLC, and Crown Energy Company (hereinafter "Defendants"), allege and state as follows:

### I.    JURISDICTION AND VENUE

1.    This is an action for relief under the provisions of Section 17(a) (15 U.S.C. § 77q et seq.) and Sections 12(a)(1) and (2) (15 U.S.C. § 77l) of the Securities Act of 1933,(the "Securities Act"), Section 10(b) (15 U.S.C. § 78j(b)) of the Securities Exchange Act of 1934, as amended ("the Exchange Act"), and Rule 10b-5 thereunder (17 C.F.R. § 240.10b-5).

2.    Jurisdiction of this Court is conferred by Section 22 of the Securities Act (15 U.S.C. § 77v) and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

3.    One or more of the defrauded investors in this case resides in the Northern District of Texas.

4.    Venue is proper in this judicial district under 28 U.S.C. § 1391 (b)(2) as this is a judicial district in which a substantial part of the events or omissions giving rise to Plaintiffs'

claims occurred. Further, venue is proper under the Securities Act and the Exchange Act and Rule 10-b-5 thereunder (17 C.F.R. § 240.10b-5).

5.      At all times relevant herein, the conduct and activities of the Defendants were directed to one or more Plaintiffs and have resulted in harm in Randall County, Texas.

6.      Personal jurisdiction over the Defendants comports with the requirements imposed by the United States Constitution.

## II.      PARTIES

7.      Plaintiff Carol Smith is an investor in the Warrior Prospect. She resides in Amarillo, Randall County, Texas.

8.      Plaintiffs JT and Annie McAdams are investors in the Magnolia and Warrior Prospects as described below. They are residents of Clayton, Union County, New Mexico.

9.      Defendant Bullet Oil and Gas, LLC ("Bullet") is a limited-liability entity formed under Oklahoma law with its principal place of business at 1709 Irvine Dr., Edmond, Oklahoma County, Oklahoma 73025-2669. Bullet also conducts business via mail at PO Box 30292, Edmond, Oklahoma 73003.

10.      Defendant Steve Van Horn ("Van Horn") is an owner and manager of Bullet. Van Horn's principal place of business is located at 1709 Irvine Dr., Edmond, Oklahoma County, Oklahoma 73025-2669. Van Horn also conducts business via mail at PO Box 30292, Edmond, Oklahoma 73003.

11.      Defendant Crown Energy Company ("Crown") is a corporation formed under Oklahoma law with its principal place of business at 1117 NW 24th St, Oklahoma City, Oklahoma County, Oklahoma 73106. Crown also conducts business via mail at the same address.

## III.   BACKGROUND

12.     Beginning in 2010, Defendants began marketing the what Defendants referred to as the "Magnolia" oil prospect to JT and Annie McAdams. Ostensibly, the plan was to drill, complete, and produce the Acree 1-20 and Ellis 1-21 Wells (the "Magnolia Wells") in Pottawatomie County, Oklahoma, with investors expecting to receive a working interest in the Magnolia Wells in exchange for their investments. Ultimately, the Magnolia wells were commercially unsuccessful.

13.     Shortly thereafter, Defendants solicited JT and Annie McAdams, as investors that had invested in the Magnolia Wells for investment the "Warrior" prospect. (The "Warrior Scheme"). Defendants utilized the United States Postal Service, the internet, and telephonic communications to assist in steering the Investors to the Warrior Scheme.

14.     Defendants not only steered the Magnolia Investors (including JT and Annie McAdams) towards the Warrior Scheme, but also solicited new investments in the Warrior Scheme. Specifically, Carol White was solicited – and ultimate invested – in the Warrior Scheme.

**The Warrior Scheme**

15.     Defendants prepared and distributed promotional materials regarding investment the Warrior Scheme to the Investors. Under the promotional materials, Crown Energy, Inc., along with Basin Engineering ("Basin", an alter-ego of Crown) would be the approved operator of the wells pursuant to the rules of the Oklahoma Corporation Commission.[1]

16.     Crown, Bullet, and Van Horn marketed the Warrior prospect as "a low to moderate risk project" with "a prospect ROI is 3.12 to 1." Along with the promotional materials are charts showing expected returns for a small interest in the prospect yielding thousands of

---

[1] These materials are attached as Exhibit A.

dollars in profits, even at reduced oil prices. Defendant's representations were entirely fraudulent, and the promotional materials included cashflow potential based on oil and gas production that was grossly inflated and totally unrealistic. These misrepresentations by Defendants were submitted to investors via electronic mail and the United States mail and enticed investors to invest in the Warrior Scheme.

17.     The Defendants' promotional materials reported an "expected recoverable reserves are 85 Mbo[2] and 235 Mmcf per well" in the Warrior prospect. These representations were entirely false, upon information and belief, Defendants lack any basis, geological or otherwise supporting these representations.

18.     The Defendants' promotional materials further indicate comparable wells drilled within half a mile of the Warrior were extremely successful. Plaintiffs allege that upon information and belief, Defendants have misrepresented lofty claims made in the promotional materials. Rather, the wells were not located as represented, did not have the represented production levels, and were intentionally deceiving to the Warrior investors.

19.     The promotional materials claim that the first Warrior well will produce approximately 403,200 barrels of oil. This is false, and there is no basis, geological or otherwise, supportive of this representation.

20.     The Defendants' promotional materials state that the initial well on the Warrior Prospect was to cost approximately $1,217,300.00 to drill, with total costs of $2,329,500.00 according to Crown and Bullet's materials. In reality, the drilling and completion – which was largely conducted by Crown and its affiliates – were vastly more expensive. Drilling expenses were over $2,600,000, or more than double the represented amount, and total costs were at least

---

[2] Mbo refers to one thousand barrels of oil, while Mmcf refers to one million cubic feet of gas.

$3,575,000. Defendants wildly misrepresented the drilling costs in order to solicit unsuspecting investors and then pocket the Investors' money.

21.     The Defendants' promotional materials provided to the investors claim that the drilling on the Warrior would number "6 horizontal wells with plans for 6 increased density wells later." The first of these wells was to cost approximately $1,544,500 to drill and complete, and following its completion, it would produce thousands of dollars in profits monthly. According to the promotional materials, Subsequent wells would cost similar amounts and produce similar revenue, resulting in substantial profits to investors. In reality, only a single producing well and a single disposal well were drilled, at inflated costs.

**Plaintiffs' Investment**

22.     All of Plaintiffs' investment in the Warrior Scheme was consummated by the execution of a certain January 5, 2012 Operating Agreement, which constituted a sale of a security under applicable state and federal law.

23.     Plaintiffs JT and Annie McAdams paid Crown Energy at least $352,126.88 for a 10% working interest in the Warrior Scheme.

24.     Plaintiff Carol White has invested at least $107,256.46 for a 3% working interest in the Warrior Scheme.

25.     Based on Defendants' gross misrepresentations of the productive capabilities of the Warrior Wells, Defendants solicited and received monetary investments totaling $459,383.34 from Plaintiffs in exchange for a promise to assign Plaintiffs their proportionate share of the working interest in the Warrior prospect.

26.     Further, besides Defendants obtaining funds fraudulently, they used those solicited funds for purposes to pay exploration, drilling, completion, and operations costs vastly in excess of the represented costs of the Warrior wells.

**COUNT 1 – Securities Act Section 12(1)**

27.     Plaintiffs reallege all allegations contained in the preceding paragraphs of this Complaint.

28.     Pursuant to representations made by the Defendants in their promotional materials, Plaintiffs entered into operating agreements and invested substantial sums of money with the expectation of receiving working interest in the Warrior prospect wells which was low risk and would generate substantial profits.

29.     The acts described herein involved the purchase and sale of securities within the meaning of Section 2(1) of the Securities Act and Section 3(a)(10) of the Exchange Act by means of oral communications, by use of the mails, and by the use of the means and instrumentalities of interstate commerce.

30.     Randall County, Texas is one location where a substantial portion of the actions and occurrences complained of herein occurred. Randall County, Texas is the county of resident of the Plaintiff Carol White.

31.     All Defendants participated in the offer and sale of these securities. Defendants Bullet and Van Horn directly solicited investment from Plaintiffs. Upon information and belief, the promotional materials were drafted by Defendant Crown, and Crown ultimately sold the securities to Plaintiffs.

32.     The Defendants and each of them made false and misleading statements and are primary violators in the actions complained of herein.

33.     The securities offered and sold by the Defendants to Plaintiffs were offered and sold by the Defendants in violation of Section 12(1) of the Securities Act.

34.     Plaintiffs have been required to employ an attorney to prosecute this action and are entitled to recover their reasonable attorney's fees and costs as well as damages and attorney's fees and costs for the violation of Section 12(1) of the Securities Act.

35.     Plaintiffs are entitled to damages in excess of $75,000.00, interest and reasonable attorney's fees and costs for the violation of Section 12(1) of the Securities Act.

**COUNT II – Securities Act Sections 12(2)**

36.     Plaintiffs reallege all allegations contained in the preceding paragraphs of this Complaint.

37.     Defendants engaged in other manipulative activities and fraudulent courses of conduct in regard to their sale of these securities to the Plaintiffs.

38.     The foregoing misrepresentations and omissions concern material facts which were made in and/or omitted from oral and written communications from the Defendants to the Plaintiffs in connection with its purchase of securities from the Defendants.

39.     At the time Plaintiffs purchased securities from Defendants, the Plaintiffs did not know of the untruth of the facts misstated. Therefore, Defendants violated Section 12(2) of the Securities Act in connection with their sale of these securities to the Plaintiffs.

40.     Plaintiffs are entitled to damages in excess of $75,000.00, interest and reasonable attorney's fees and costs for the violation of Section 12(2) of the Securities Act.

**COUNT III – Exchange Section Act 10(b)**

41.     Plaintiffs reallege all allegations contained in the preceding paragraphs of this Complaint. Plaintiffs allege that untrue statements of material facts, the omission of material

facts and the manipulative and fraudulent activities and the fraudulent course of conduct of the Defendants in connection with the sale to Plaintiffs of securities were in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

42.     The alleged misstatements were made by the Defendants with complete knowledge of their falsity and Defendants knowingly omitted to state to Plaintiffs the facts alleged to have been omitted and that these facts were material.

43.     Plaintiffs did not know of the falsity of the Defendants' warranties and representations. Further, the Defendants knew certain facts were omitted and the Plaintiffs relied upon these statements of facts which were made by the Defendants.

44.     Therefore, as a result of these untrue statements, omissions, manipulative and fraudulent activities and fraudulent courses of conduct the Plaintiffs have suffered damages in excess of $75,000.00.

45.     The statements made by the Defendants were knowingly made with wanton and total disregard of the rights of Plaintiffs.

46.     Plaintiffs should be entitled to recover exemplary or punitive damages in an amount to be determined by the Court in order to deter the future conduct of Defendants and to set an example for others not to engage in this course of conduct.

**COUNT IV – Securities Act Section 17(a)**

47.     Plaintiffs reallege all allegations contained in the preceding paragraphs of this Complaint. The Plaintiffs allege that the misstatements, omissions, manipulations and fraudulent activities and the fraudulent conduct of the Defendants constitute a violation of Section 17(a) of the Securities Act and, as a result thereof, Plaintiffs has sustained damages in an amount of no less than $75,000.00.

**COUNT V - Oklahoma Securities Act**

48.     Plaintiffs reallege all allegations contained in the preceding paragraphs of this Complaint. The actions of Defendants in the offer and sale of the securities to Plaintiffs were violative of the Oklahoma Securities Act.

49.     Defendants violated certain provisions of the Oklahoma Securities Act, including Okla. Stat. tit. 71, § 510 *et seq,* as a result of their schemes and artifices to defraud Plaintiffs by making untrue statements, omitting material facts and engaging in acts practiced in the course of business which operated as a fraud and deceit upon Plaintiffs.

50.     Defendants made material false representations and their actions were deceitful to Plaintiffs. Defendants were aware that they were misstating material facts and omitting to state material facts to Plaintiffs. Further, Defendants knew the Plaintiffs would rely on these representations.

51.     Plaintiffs expressly relied upon the misrepresentations of Defendants and the actions of Defendants to Plaintiffs constituted fraud.

52.     The deceit and/or fraud perpetrated by Defendants upon Plaintiffs was knowingly and willfully done by Defendants with total disregard to the rights of Plaintiffs, who relied upon that deceit and/or fraud.

53.     Defendants' conduct offends public policy and is unfair and involves practices which are immoral, unethical., oppressive, unscrupulous, and unconscionable.

54.     Accordingly, Plaintiffs request that they be awarded punitive and exemplary damages.

**COUNT VI – Texas Securities Act**

55.    Plaintiffs reallege all allegations contained in the preceding paragraphs of this Complaint. The actions of Defendants in the offer and sale of the securities to Plaintiffs were violative of the Texas Securities Act.

56.    Defendants violated certain provisions of the Texas Securities Act, including 581-33(A)(1) and (A)(2) *et seq,* as a result of their schemes and artifices to defraud Plaintiffs by making untrue statements, omitting material facts and engaging in acts practiced in the course of business which operated as a fraud and deceit upon Plaintiffs.

57.    Defendants made material false representations and their actions were deceitful to Plaintiffs. Defendants were aware that they were misstating material facts and omitting to state material facts to Plaintiffs. Further, Defendants knew the Plaintiffs would rely on these representations.

58.    Plaintiffs expressly relied upon the misrepresentations of Defendants and the actions of Defendants to Plaintiffs constituted fraud.

59.    The deceit and/or fraud perpetrated by Defendants upon Plaintiffs was knowingly and willfully done by Defendants with total disregard to the rights of Plaintiffs, who relied upon that deceit and/or fraud.

60.    Defendants' conduct offends public policy and is unfair and involves practices which are immoral, unethical, oppressive, unscrupulous, and unconscionable.

61.    Accordingly, Plaintiffs request that they be awarded punitive and exemplary damages.

### COUNT VII – Breach of Participation Agreement

62.    Plaintiffs reallege all allegations contained in the preceding paragraphs of this Complaint.

63.     Defendants' actions and inactions are in breach of the Participation Agreements underlying their investment in the Warrior prospect.

64.     As a result of the breaches of contract in addition to Defendants unjust enrichment, Plaintiffs have suffered damages in excess of $75,000.00 as well as attorney fees, costs and interest.

**COUNT VIII – Negligent Misrepresentations**

65.     Plaintiffs reallege all allegations contained in the preceding paragraphs of this Complaint.

66.     Defendants made negligent misrepresentations to Plaintiffs.

67.     As a result of Defendants' negligent misrepresentations, Plaintiffs suffered damages in excess of $75,000.00 as well as attorney fees, costs and interest.

**COUNT IX – Wire Fraud**

68.     Defendants engaged in a deliberate and intentional scheme of fraud, including wire fraud, from which they derived monetary benefits.

69.     Plaintiffs allege upon information and belief that, once defendants had possession of the invested funds, Defendants utilized the United States Banking System, including lines of communication and information technology to convert invested funds for their own use as well as continue and perpetuate the fraud, thereby committing wire fraud.

70.     As a result of Defendants' deliberate and intentional scheme of fraud, including mail fraud and wire fraud, Plaintiffs suffered damages in excess of $75,000.00 as well as attorney fees, costs and interest, and are entitled to rescind their various Participation Agreements with Defendants.

**COUNT X – Mail Fraud**

71.     Defendants engaged in a deliberate and intentional scheme of fraud, including mail fraud, from which they derived monetary benefits.

72.     Defendants utilized the United States Postal Service to fraudulently procure investor funds, thereby committing mail fraud. Defendants also utilized the United States Postal Service to continue and perpetuate the fraud from which they derived monetary benefits. As a result of

73.     Defendants' deliberate and intentional scheme of fraud, including mail fraud, Plaintiffs suffered damages in excess of $75,000.00 as well as attorney fees, costs and interest, and are entitled to rescind their various agreements with Defendants.

## PRAYER

WHEREFORE, Plaintiffs demand judgment against all Defendants for actual damages in an amount not less than $75,000.00 with interest thereon and exemplary damages in an amount not less than $75,000.00.  In addition, Plaintiffs request that the Court grant them attorney fees, costs, and any other relief the Court deems necessary and proper.

Respectfully submitted,

*MULLIN HOARD & BROWN, L.L.P.*
John Mozola, TSB No. 14615500
Richard Biggs, TSB No. 24064899
500 South Taylor, Suite 800, LB #213
P.O. Box 31656
Amarillo, TX 79120-1656
Tel:     806-372-5050
Fax:     806-372-5086
rbiggs@mhba.com
www.mullinhoard.com

By:     _____
        Richard Biggs
        *Attorneys for Plaintiffs*